Good morning. This is the case that was continued from our sitting previously. It's number 17-2676 Shifflet v. Korsniak et al. Ms. Wander. Good morning, your honors. May it please the court. My name is Elise Wander, representing the appellant, Mr. Paul Shifflet, and I have my supervising attorney, Ben Daniels, at the council table. Welcome. With the court's permission, I'll reserve five minutes for rebuttal. That's fine. Thank you. Mr. Shifflet was denied adequate medical care for over eight months after one of the defendants, Dr. Roan, drove a screw into his wisdom tooth. We got the facts down. Question. I'm not sure anybody's addressed it. Sorry, Mike. Is he incarcerated currently? No, he's not, your honor. If he's no longer incarcerated, does the PLRA exhaustion even apply to his suit anymore? Were he to amend his complaint? Some courts have found that the PLRA does not apply to an amended complaint. This circuit hasn't decided that at this time. I don't think it's necessary for this court to decide that now, but it is an issue, your honor. The case that I was looking at was Achmed, A-H-M-E-D-B, Drogovich, 297F3-201, on page 210. It was a 2002 case from our circuit where it says, in effect, as I read it, exhaustion requirement does not apply to suits by former prisoners where a prisoner plaintiff is no longer incarcerated. Any dismissal on exhaustion grounds should be without prejudice to refiling. Yes, your honor. We would advocate that Mr. Chaflet, now that he is out of prison, were he to amend his complaint, would not be subject to the PLRA requirements. However, that would be something our understanding, or at least our understanding, is that that would be something for the district court to address. Could I ask about the First Amendment retaliation claim, the exhaustion on that? He did not grieve that, is that correct? And so what is the basis then for our hearing that, if he did not grieve that particular claim? So Mr. Chaflet is not required to plead around exhaustion. Exhaustion isn't a jurisdictional ground and it's been weighed by most of these defendants. With regard to if one of the defendants were to raise the exhaustion claim, specifically with regard to retaliation, there's also an availability issue there. Under Rinaldi, this circuit has said that when a plaintiff credibly fears retaliation for filing a grievance, he is not required to exhaust that grievance. So under Rinaldi, were one of the defendants to raise that defense with regard to retaliation, he would very likely be able to make an availability argument under Rinaldi. And is that a decision that the judge would make, or is that a fact issue? Availability is a legal issue to be cited by the court. And so there's a subjective and an objective component to that, to the Rinaldi exception. Am I correct about that? Yes. He has to credibly fear retaliation. He has to actually fear retaliation. And a reasonable person would have done it. And what is the evidence, at least that we know on the record, is that both of those requirements are satisfied here? So Mr. Shifflett didn't specifically say in his complaint, I feared retaliation and that's why I didn't file a grievance about this. However, we do know that after he was transferred the first time, that's when there was a two month delay between when the decision was written for his grievance response and when he actually received the grievance. So it's very likely that his first transfer actually prevented him from pursuing his grievances, as well as took him away from the treatment that he was receiving at Temple University and the doctors that were treating him there. So although he's not required to plead any facts around exhaustion, it's an affirmative defense on the defendants to prove. He has alleged facts that would suggest that a reasonable person may have both feared retaliation and that retaliation was a serious issue for him in the transfer. It seems to me that what you just recited really goes to the exhaustion of the other claims. I'm not sure that it works on the First Amendment retaliation claim, though. Yes, for his retaliation claim, the adverse action that he suffered in retaliation for filing his grievances was being transferred. So the fact that he was transferred once and that that transfer did very likely prevented him from pursuing his grievances, pursuing his First Amendment rights, shows us that he very well may have feared retaliation. He has not specifically said, I feared retaliation, but he didn't need to at this stage. Was this issue, was this matter raised in your reply brief? In our reply brief, yes, we discussed. Was it raised in the initial brief? I don't believe that we discussed specifically the retaliation claim exhaustion in the opening brief. Is that a problem that you did not raise it in your initial brief? No, Your Honor, the district court's decision does not specifically address the retaliation, the exhaustion of the retaliation claims. So we were focusing on the opening brief on the specific issues that the district court decided on. And then in the reply brief, we attempted to also spell out some of the other issues in more detail. OK, thank you. Is the retaliation claim primarily against Korsniak? At this point, Your Honor, yes. We know that Mr. Korsniak knew and acquiesced to Mr. Shifflett's transfer based on his complaint. The fact that he alleged an under road that is sufficient for Mr. Korsniak's personal involvement in the transfer. If for some reason this were remanded, then would you would you seek to amend the complaint to add that? Yes, we expect that Mr. Shifflett will be able to expand his retaliation claim and to plead more specific facts with regard to that claim. If he was given leave to amend. Are you asking us to extend Smalls and Robinson or merely apply Smalls and Robinson as it as it applies to both the first two grievances on the one hand and the grievance three and four, if you will? This is an application of Robinson that's in line with the application of Robinson that this court has applied it in both Ryder v. Bartholomew last year and in Flynn v. Department of Corrections. Those were cases where in Ryder, just like in this case, there was a backdated grievance decision that was dated for one day, didn't get to the plaintiff for another two weeks or so. And this court found an availability issue there under Robinson. So this court falls squarely under Robinson for with regard to the first two grievances. For the second two grievances. Thanks. The second two grievances because the prison never responded at all. This is an even more clearly unavailable remedy than the grievances in Robinson that had been responded to very late. It was impossible, literally impossible for Mr. when he had not received a response. So is your position with regard to the argument that grievances three and four are essentially duplicative of one and two, that really that's just the red herring because the focus should be on, if you will, the second stage of appeals and the fact that the prison never responded? Yes, because all four of the grievances were raised valid issues. And because the prison either responded too late or didn't respond to them, all four of them were unavailable. So given that this court doesn't need to go into the specifics of how one of the what facts were in one of the grievances or were in the other one. If this goes back, if we were to remand it, should counsel be appointed under the Tavron factors? Absolutely, Your Honor. And this court, in a similar case in Flynn v. Department of Corrections, instructed the district court to appoint counsel on remand for an availability issue. Under Tavron v. Grace, the test begins with a threshold matter of whether the plaintiff is indigent and whether the plaintiff is able to pursue his claims and to the merits of the claim. For a claim of substantial merit, such as Mr. Shifflett's, counsel should almost always be appointed. Even if the case only has arguable merit, the court should seriously consider appointing counsel. Would the clinic be eligible to be that counsel or would it have to be someone else? It would. Our clinic only does appellate litigation. So, yeah, we wouldn't be able to continue. All right. Do you have another clinic? Yeah, it does have many clinics. Let me ask you this question about exhaustion. It seems apparent that I think it's Golarsky. How do you pronounce it? Goslorsky. Oh, yes. Is it Goslorsky? Goslorsky. Goslorsky. I get it right. It appears that the doctor is the only one who really raised exhaustion. Does that mean that pretty clearly everyone else, they just go by the wayside, at least as far as considering exhaustion? Yes. Under Ray v. Kurtz, exhaustion is a waivable defense. So the district court shouldn't have presumed that those defendants who hadn't raised failure to exhaust wished it to apply failure to exhaust against them, particularly for the defendants that are still asking this court to rule on alternate grounds. Additionally, under Robinson v. Johnson, this court has said that a defendant has to raise an affirmative defense as early as practicable in the proceedings. Great. We'll get you back on rebuttal. Thank you, Your Honor. Thank you. Ms. Ryan Fury. Good morning. May it please the Court. My name is Emily Ryan Fury, and I represent the defendant at bully, Dr. Muhammad Goslorsky. I was planning to start with the issue of exhaustion. As you know, there were four grievances which Mr. Shifflett filed, and we believe that they all deal with the issue of his pain management following jaw surgery. Now, he filed – when was the response due with regard to the first two? Was it June 27? Your Honor, I don't know that I have the exact date in front of me. I thought it was June 27, and there was no response from the prison officials until July 27. It certainly was past the deadline, yeah. So if that's the case, is exhaustion in play at all? I mean, you've got – you know, Robinson and other cases, they're talking about if you don't have a – if people aren't cooperating with you, then in effect there's no remedy available for you to somehow not exhaust. I understand, Your Honor. However, I don't believe that – I believe that this is factually distinct from Robinson. Well, I'm just talking about – let me start maybe more back-at-home play than anything else. It looks like only one defendant brought up the exhaustion issue, and that was Dr. Goslorsky. Yes. And the district court didn't acknowledge that. Don't we have to view that in effect with the other five defendants that the court dismissed for lack of exhaustion sua sponte? Your Honor, I don't know that I can speak for the other defendants, but, I mean, I believe that because Dr. Goslorsky did properly raise the argument that, if anything, the court should find that that is a valid argument as to him. I don't know about the other defendants, but – Well, then let's go back to – You haven't said it in your papers that it applied to everyone. Am I misrecollected? No, I believe you're correct, Your Honor. I think that under Ray v. Kurtz that it is okay for the court to consider it as to all the defendants because – Well, what's the purpose of the rule with regard to affirmative defense then? I'm not sure, Your Honor. Like I said, I think that because Dr. Goslorsky did raise it properly, he shouldn't be penalized because the other defendants did not. Well, how do you get past the fact that – pardon me – that there was no response on three and four? You know, whether there's an overlap – and I would never concede that there is an overlap. I think if you look at all four, they're distinct in time, they're distinct substantively, but let's put that aside for a moment. There's a process, there's a procedure, and in the middle of the process he appeals and there's no response. How do we address exhaustion in that context? I still don't believe that that made the remedies unavailable to him because he – If someone doesn't respond to you, what are you supposed to do? Honestly, like tell me – you're my lawyer, I am he, I am Shifflett. What was I supposed to do? I think that he should have inquired about the status. He didn't submit any – There's an obligation under what for him to do that? That supersedes the obligation of the prison to respond under its grievance procedure. I think that the law is that – and the circuit is clear that the – Well, the law and the circuit is clear that the grievance procedures have to be followed. That's clear. So my question is very specific. Is there any part of the grievance procedure that would guide him, given the fact that the prison did not respond? I cannot point to an exact part of 804 that specifically says what he should have done in that situation. In the absence of your ability to do that, then why wouldn't we forego any consideration of exhaustion? Because they failed to comply with their own procedure and hence their procedure is not followed. Our jurisprudence isn't followed. How does that allow us to skip over those things and say exhaustion? Affirm. I think in the situation he didn't submit the appeal properly, there's no evidence that the prison received it and processed it as a grievance appeal. I think the fact that he wasn't diligent enough to follow up and inquire about the status is a factor that should be considered. And I think the duplicative nature of the grievance should also be considered. He still had access to the grievance process. I mean, it's duplicative if you say, oh, it was about the surgery. But clearly, substantively, you'd agree that each of the four of them. I mean, they're obviously separate, separate in time. They're they're different in exactly what they're complaining about. You would agree with that, no? There are some differences, slight differences in them. Yes, I think overall that they are very similar, though. Let's see if I get this correct. Sixty two. Fifty twenty one. His first grievance was filed on May 4, 2016, right? Yes. And his second one was filed a week later, which I'm guessing was about May 11. Is that correct? Yes. And then Mr. Korsniak, the health care administrator at Greaterford, denied them on May 27. Yes. Is that correct? And of course. And then he filed appeals of those decisions on June 12, 2016. Yes. So there's 15 days to respond, which would be June 27. And yet they didn't act on the appeals to July 27 over a month later or a month later. So isn't the fault under the with respect to exhaustion on the prison? They needed to respond by June 27. They didn't write. They stated in the response dated July 27 that it would not affect his appeal rights. In the sense that if he had. What do you understand that to me? That if he had appealed by within 15 working days of July, two things, if he had appealed within 15 working days of July 27, 2016, that it would not have been denied as untimely if he's if we're going under his allegation that he didn't receive it until 60 days later. I believe that in that case, he should have sought an extension, which there is a section for under the policy. Why is the burden on him? There's case law that says it's good for the goose. I mean, it's all these cases. I love that one. Finish what's good for the goose is good for the game. I mean, I mean, it just seems like if if there's rules, both sides got to got to comply. And if we're going to turn those rules against a somebody like Mr. Shiflett, if he doesn't comply, why don't you turn them against the defendants here if they have if they don't comply, or at least the individual defendants who did not or the official to the entities that didn't comply? Your Honor, I think the grievance process, it can be exacting and it can be difficult, but it does have to be followed by everybody. By everybody. Yes. In addition to Mr. Shiflett. And he didn't he didn't inquire about the status. He didn't ask for an extension. Where is there anything that he has to he has to inquire? By the way, it was a gorgeous a number of things here. He did inquire. You know, what are you doing? Finally, he ends up having to file a complaint here. And as it turns out in the in the district court, only your client brought up the exhaustion issue even at all. And yet the court somehow ruled for others, well, failure to exhaust as to them. But it looks like under the Supreme Court's case law, at least from, I guess, 2018. And then also Robinson, a failure to timely respond to an inmate's properly filed grievance renders its remedies unavailable under the PLR. At least that's what Robinson says. So if remedies are unavailable. How can he fail to exhaust your eye? I think that the key part of Robinson is not only that it was that the response was untimely on the part of the prison, but they also factored in that the inmate filed multiple requests to staff inquiring about the status and still receive no response to those as well. So take take take us through this particular factual scenario. We have four grievances, each of which there was at least one violation by the prison as far as timeliness. Now, that would be multiple in my book. So what is the substantive difference between this situation? Given what I've just said and what we understand the facts to be and Robinson, because these are clearly multiple. I think in Robinson, the inmate never received any response whatsoever. Here, Mr. Shifflett did receive responses. He did work his way through the process, appealed to Soyga. And then not only was his appeal untimely, but he also did not attach the proper paperwork. It was denied. The first two grievances were denied for two procedural defects, not only untimeliness, but also failure to attach the proper paperwork. And so I think where he procedurally defaulted and then filed suit, I just believe that that's different than Robinson, where there was just simply no response for months and months and months. And then how did he how did he procedurally default? By the prison found that he defaulted by being untimely and also by failing to attach all of the proper documentation to his appeal to Soyga. But does any of that come into play if I mean the Fifth Circuit, Sixth Circuit, the Seventh Circuit, the Eighth Circuit, the Tenth Circuit, and they've been cited approvingly by Robinson, the Fifth Circuit and Powell. P.O.W.E. says that, quote, a prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding there to has expired. Close quote. Should we not make that plain? There's no other there's no circuit that goes the other way, by the way. Your Honor, all I can say is that I think that if we were to overturn the district court's decision that inmates will be able to just say that they received an appeal late just when it suits them. Well, how's the appeal late? That they received a response late, as in this case where Mr. Shifflett is saying that he didn't receive it until 60 days after it was. That was that was that's one aspect of this case. But I'm talking about I'm going before that. He filed the appeal on June 12 and they have until June 27 to reply and they don't reply, do anything until July 27. And then yet only one person, your client, argues exhaustion. But even there, it doesn't seem that it necessarily applies if we follow these cases that I just noted. Why don't we hear from Mr. DeFelice or DeFelice? DeFelice. And we'll go from there. Thank you. Good morning, your honors. May it please the court. My name is Chase DeFelice. I'm with the Commonwealth of Pennsylvania. I represent corrections appellees, Berkholder, Bianco and Korsniak. The corrections appellees should prevail in this matter. Therefore, the district court's decision should be affirmed for three reasons. First, the appellees, the corrections appellees, are not deliberately indifferent to the appellant's serious medical need. As the complaint illustrates in three paragraphs, it's a rather detailed complaint. It shows Bianco Berkholder providing care to the patient through x-rays, reviewing those x-rays, CT scans being ordered, pursuing outside treatment for the patient, ordering penicillin for the patient, as well as replacing his diet to a soft diet. Those are the paragraphs that are alleged. That's the complaint as it alleges. Let me ask you this question, then. As I read the district court opinion, the principle holding is with regard to exhaustion. And essentially, any discussion of substantive issues is, I wouldn't say advisory, but clearly dicta. So you jump right to the substance. Now, how can we do that? It would appear that the first thing you'd have to address is exhaustion. Let's assume that you were correct in whatever you propose based on your papers. I would say it's please affirm on exhaustion, then we wouldn't get to the substance. So rather than get to the substance, was there deliberate indifference, which, of course, is not the question that we get to. Even if we got to deliberate indifference, it would be what was alleged. And is that sufficient? So let's put that aside for a second. Let's talk about exhaustion. With regard to, I think you named three clients. Yeah. Okay. With regard to those three clients, Judge Ambrose talked about sua sponte exhaustion. How do we even address exhaustion with regard to your clients? Not specifically pled, so that's kind of strike one. And we can go through with the baseball analogy, but I've set the table. Go ahead. Hopefully I don't strike out, Your Honor. We have, looking at Curtis. You can join Bryce Harper. Sorry. That's all right. Had to get my dig in. So Curtis gives the court the ability to look at the matter and rule on its behalf. And a similar case was Jenkins v. Dansha, which was a western district case. This court affirmed it was an unpublished opinion. The district court judge said in that case. Come on now. You know better. You're in the Third Circuit now. We're not going to listen to an unpublished opinion, right? No, but I. Right, so you're going to tell me something else. You're going to tell me some other case that's going to wow me. That's published. That is not going to be a wowing case. But the judge in that case indicated in light of the futility of continuing litigation of a case that this court has determined it is barred from hearing and pursuant to screening provisions of the PLRA or this court's inherent power to control its own docket. They therefore said the exhaustion on behalf of the corrections appellants or appellees. Excuse me. In that case, that was the district. How's that? You know, I can't speak for my colleagues, but that's not helping me. So help me. I mean, a western district case. Love the western district. Well, Pittsburgh at all. But, you know, help me. Well, again, this court in Curtis allows for the court to dismiss it when it's plain on its face. What's plain? What's plain? Yeah. When the exhaustion is plain on its face. So in this instance, you have Mr. Shifflett, the appellant, indicating that he filed two grievances. How do you get over the fact that with what we are referring to as grievances three and four, there's no response? There's one problem, at least the way I see it, is that Mr. Shifflett doesn't plead that there was never a response, at least from my reading of his complaint. Does he have to do that if there's no response? I mean, didn't we just talk about with one and two that if there is no timely response by the defendants here, that remedies are unavailable and there's nothing further that persons like Shifflett need to do? Same thing for claims three and four, the complaints three and four. For three and four, I'm not sure how we know this because he doesn't tell us. He attaches them as attachments, with all due respect, but he does not illustrate it in his complaint at all to say whether he received a response or not. So we're kind of, at least from my perspective, based on who you represent, would you know whether there was a response? I know whether there is outside the record, absolutely. But within the record as he's pled it, I do not know. And I'm not trying to play semantics or anything like that. I hope not. However, that's the way the complaint reads it, as if he attaches it, but there's no indication whether a response was provided. He doesn't indicate one way or the other in his complaint. He states that he filed two grievances regarding this issue. Let's start with something more basic. The district court didn't mention them. How about that? The district court failed to mention these two other grievances? Yes. That is correct. They failed to mention these two other grievances. So if they don't mention the two other grievances, doesn't that just call for a remand at the outset? I mean, we can't make it up. Sure. I think the position that was previously argued before was that they were duplicative in nature from the previous. Obviously, Judge Greenaway, you totally disagree with that, based on your representation. I make no representations. I ask really good questions and I sometimes get answers, but sometimes I don't. I haven't taken a position. Let's be clear on that. But since you brought up these grievances, 1, 2, 3, and 4, what's the law on this? I mean, if the district court doesn't respond to 3 and 4, what would we be – we can't affirm, right? I mean, what would we be affirming? If nothing else, you would agree that there would have to be a remand to 3 and 4? I think it would have to remand to 3 and 4 if the court feels that the corrections response was not appropriate, meaning that it was duplicative. Yeah, but the duplicative nature of the – well, first of all, they all are separate in time. Agree with that, yeah? Agree. Okay. And they all address conditions and persons that he's complaining about that are also separate in time, right? They're not all – and they all are not complaining about the same thing. Pain and one failure to medicate at a particular level and another – I mean, we can't clump them all together. I mean, if we throw them up and say it's all about the surgery, we can't do that, right? Because the actual articulation of the complaints in each instance is different. Sure. Okay, so you would agree, then, that unfortunately it's a remand. On those issues, I feel that the court did address the other matters. Grievance 1 and 2. Grievance 1 and 2, but also the merits. I know this – How do we get to the merits? You started off with – I think the court ruled on the merits. I understand you say it was dictative, but I think they went into the actual merits. Yeah, you do agree that – look, let's just deal with this as a theoretical matter for a second. Forget about our case. You do agree with the proposition, right, that if a court rules on a procedural matter that the case can't go forward, that whatever it says as to the substantive claims can't be a holding, right? I agree with that. Okay, so then anything that the district court said on the substantive claims is not a holding, so there's nothing for us to either affirm, reverse, or vacate. I understand the position. That's not the position. I thought we were talking about the law. That's the law. I agree with that. I think in this instance, the court was trying to double down to really show the futility of this complaint, and that's the position of the corrections appellees in this matter, that the retaliation claim was not grieved. There was no grievance regarding retaliation. There's no – there's an idea of a transfer being a retaliation where you have an appellant who pleads that he's no longer allowed at Graterford due to a separation. That's in the complaint. So it's clearly not an adverse action as a result of a constitutionally protected conduct because he's saying, I can't go back to Graterford. I was transferred because of the separation. So I think that it would be futile to send that back down on retaliation for retaliation purposes. Well, Judge Ambrose asked one of your confreres at the bar that wouldn't it make sense to have counsel appointed? I mean, if you think of the articulation of that claim, you know, what is it void of? It's void of sort of a legally refined voice, if you will. If there is consideration of appointment of counsel, that may well change. But we do have to start with the ruling that the district court made and I think we're – Thank you for your time, judges. Thank you. We'll get Ms. Plakins. Plakins or Plakins? Correct. Thank you. You're representing Dr. Mulligan? I'm sorry? You're representing Dr. Mulligan, is that correct? I represent Dr. Mulligan. Good morning, Your Honors. May it please the court, Ava Plakins for Dr. Mulligan. I'm going to move my argument around, Judge Greenaway, to address exhaustion because that is clearly what is on top of mind of this court. Dr. Mulligan is unique among all the defendants in that exhaustion of remedies is simply not an issue with him. I thought you were going to say your main claim was that he wasn't noticed on the appeal. That was going to be my first argument, Your Honor, but I think that the court is very concerned about exhaustion and I want to address that concern top of mind. I absolutely do believe that Dr. Mulligan was not properly served with notice of appeal. His name was affirmatively taken out of the caption, that his name was in the complaint but it was not in the notice of appeal and neither was the motion to dismiss of Dr. Mulligan and neither was his name. The case was pretty clear, although it's very fact-specific, but you have to give notice of the appeal. My question to you is this. I thought the focus of your argument was the PLRA and the grievance procedure don't apply to us. Now, if they don't apply, then this exhaustion rubric that we've been discussing really doesn't apply. So if that's so, then your client is one of the dentists, yeah? He's an oral surgeon, chairman of oral surgery at Temple. Okay. Yeah, he's fine. He's a DMD. I know if my son was a chairman of oral surgery, I would want him to be called a dentist. Yeah, you sure would. He's proud of that, too. He's a DMD. He's very proud of it. He should be. So Dr. Mulligan, the oral surgeon, if Mr. Shifflett's allegation that Dr. Mulligan refused to discuss his medical concerns because Mr. Shifflett could not afford Dr. Mulligan's expert services sufficient to demonstrate that Dr. Mulligan refused to treat him for a non-medical reason, is that sufficient at this stage to go forward? Because if the PLRA doesn't apply to him and the grievance procedures don't apply to him, the exhaustion's out. So really the only question is no displeading. First of all, I must take disagreement with your characterization of the facts. I believe that plaintiff's counsel has sort of tortured pleading to try and make it sound as though Dr. Mulligan refused to treat the plaintiff. That's not at all what happened, and that's not what he pled, most importantly. That's not what he pled. That's not what Mr. Shifflett pled. That's not what he pled. That's right, Your Honor. If you take a look at paragraph 38, he did plead that Dr. Mulligan renewed plaintiff's, this is JA8, renewed his Motrin 600. He put him on 150 milligrams of clindamycin, which is an antibiotic, four times a day. He offered his professional opinion that the clindamycin would not cure the infection in plaintiff's mouth. I'm so sorry to interrupt you. What paragraph? That's paragraph 38, right at the top of JA8. Yes, yes. Thank you so much. Sure, and plaintiff would ultimately need surgery. That's an examination. That's an analysis. That's a judgment, a professional judgment. That is prescriptions, two prescriptions. That's called treatment. That's not called deliberate indifference. The only thing that is at stake here, really, is that Dr. Mulligan refused to give his legal opinion as to other defendants in this case. That's very clear here. Dr. Mulligan explained to plaintiff that if anything legal occurred, Mulligan would become an expert witness, and plaintiff could not afford him. Fine. He wanted to treat the plaintiff. He did not want to be plaintiff's expert witness, and for that he demurred. That is not a medical treatment. That is not grievable, because it is not a condition of confinement by a government official. That is the meaning of the all... Our Rouse case from 99 makes clear that treatment, that you're treating somebody, doesn't necessarily exempt you from a deliberate indifference claim, correct? I have in mind, Your Honor, the Almaty case of 2006. I'm looking at Rouse, and it's at 182 F. 3rd, 192, and it's pages 197 to 198, and it was written by then-Judge Alito. It looks... Yes, you can have treatment, but that doesn't necessarily absolve you if they were reckless or in some other way were deliberately indifferent. I'm not saying this is that case. I'm just saying that... Sure, but that's not this case. Refusing to express an expert opinion while you have rendered treatment to the guy, it's just not medical treatment. It's a whole different thing. It's refusal to be an expert for the man against other defendants. He did render medical treatment. He did. Let me just ask one slightly different question. In the district court opinion, Dr. Mulligan is one of the moving defendants. Is that correct? He moved to dismiss, yes. No, no, no. I'm so sorry. She uses a particular nomenclature, the judge, right? She says she refers to the moving defendants. All I wanted to know was whether Dr. Mulligan, yeah, he's one of the moving defendants, right? So your position now on exhaustion isn't relevant, is it? Because if the district court ruled in your client's favor in that court on exhaustion, and that's the primary issue that we have to deal with, the fact that substantively your client may have a valid basis for a motion to dismiss on the deliberate indifference claim is really not a primary concern for us, right? Because the primary concern is the district court focused its holding on dismissing the complaint based on a failure to exhaust. So in the first instance, since Dr. Mulligan is part of that group identified as the moving defendants, if we rule in favor of Mr. Shifflett on the exhaustion claim, isn't the fact that you may have a very good argument on the substance of a deliberate indifference claim something that we have to at least in the first instance put aside? I understand your question, Your Honor. I think the reason that the court, the district court, went to the trouble of explaining its thinking on the substance was possibly aimed at my client entirely, or at least certainly. And I think that can't be ignored. That was part of the district court's thinking. And as you suggest, I think it's a very solid claim. I think that it's just very clear that Dr. Mulligan is, all the grievances that were made predate his care, predate the time he met the plaintiff. They have nothing to do with him time-wise. They have nothing to do with him substantively. And the nature of the complaint that they bring against Dr. Mulligan, which is not failure to treat, but refusal to be an expert, is not grievable. I agree with you, therefore, that the court's holding as to failure to exhaust or whatever it had to say about exhaustion is not all that relevant to Dr. Mulligan because his argument has nothing to do with exhaustion. Plaintiff was not required to exhaust administrative remedies as to him because this was not grievable conduct, refusal to be an expert. And I think that's why Judge Quinonez gave us the benefit of her thinking on the issue on the very substance. Having gone to that trouble, I think the court can affirm. I think that the exhaustion issue is not an obstacle with respect to Dr. Mulligan. And the court can simply affirm. I think the district court offered it. I think you can affirm. Thank you. Thank you. And I do also raise the issue of notice of appeal as a threshold issue. Thank you. It's very good. In your eyes. Dr. Rome, I guess it's all started with Dr. Rome. I guess so. Yes. To address the question of whether the court can reach the issues of deliberate indifference, the retaliation claim in the context of the defendants that didn't plead or didn't plead as an affirmative defense failure to exhaust or brief it. This court can affirm on any basis in the record. And our position is that upon review of the complaint and on this record, including the complaint, it is not sufficient. The allegations are not sufficient to support a deliberate indifference or retaliation claim against Dr. Rome. And that amendment. If you want to put aside exhaustion for the moment, as you suggest, why? Why would there be futility in amendment? I mean, the the the the futility analysis of the district court is strictly tied to the fact that as the court looked at the exhaustion issue, they said, well, it's futile because you can never get over the time problem. So if we set that aside, you see some deficiencies here, but there was a foreclosure of amendment because of the perception of exhaustion. So why, if you assume for a moment that that set aside, why would there be a futility to amendment now? Again, the court can affirm on any basis in the record and reviewing the record. I think there is grounds for affirmance on a fit on futility on different bases in the district court's exhaustion analysis. And certainly I would say that would be with respect to the retaliation claim, starting with that, with respect to Dr. Rome. She's not a corrections defendant. She had absolutely nothing to do with the decision with respect to whether to transfer or not, and had no involvement whatsoever in the. Contract that acting at the behest of of the of the prison for treatment of the dental situation, not with respect to managing the grievance process or playing any role in that. Or for that matter, in making any decisions with respect to where Mr. Shiflett may be transferred, when he's going to be transferred, why he's going to be transferred. None of those decisions. Let's put aside the first amendment for a second. But for the purposes of this discussion, I'll give you that. Go to the substance. Then why would it be futile to allow him to amend as to the substance of the deliberate indifference claim? Well, first of all, in plaintiff's opening brief, they didn't raise any issue with respect to Dr. Rome. It wasn't pled in the complaint. And frankly, no facts can be pled to show that Dr. Rome had any role in the transfer of Mr. Shiflett to any prison within the prison system. She was outside the scope of that process, that decision making process. She had nothing to do with it. Putting aside what I think is the waiver of the issue for failing to brief it with respect to Dr. Rome in the opening brief. We also just have the issue that factually that claim can never be supported, even on remand. And if you look at the complaint as stated, nothing that Dr. Rome did. Are we still talking about the first amendment claim? Correct. I just said put it aside. Oh, I'm sorry. Yes, sir. I said talk about deliberate indifference. With respect to deliberate indifference, the issue here seems to turn on, according to the complaint, Dr. Rome's decision not to remove the left bottom wisdom tooth and placing two plates to repair a broken jaw following a fight at the prison. Is part of it also denial of particular prescribed medication or a dosage issue? There is one allegation that upon visiting Dr. Rome in a follow-up visit, he asked for additional pain medication. But if you look at the grievances that were filed and attached to the complaint and part of the record, it's clear that during that same time frame where he's asking the doctor to hand him over drugs or a prescription or pills for the pain, he did have a prescription at the corrections facility, and that prescription, according to the plaintiff, was not being fulfilled on that end. Three times a day, not twice a day. Correct. So what he asked for at that visit was to have the doctor hand him over pills. And our position is she did not deny him treatment or delay treatment because that medication had already been prescribed and his problem was that it wasn't being provided to him in a timely fashion at the corrections facility. So in light of those facts, there is no delay in treatment, there is no deliberate indifference. It's just a disagreement with respect to how she... which we have to assume is true. Correct. None of it would be... And his allegations show that he was receiving, he had been prescribed medications during the time that he states that he asked for and did not receive medications. In other words, his surgeon had already prescribed medications for that surgery and for the pain following the surgery. All right. Thank you. Thank you. Ms. Wander on rebuttal. Go ahead. Thank you. As you're coming up, a question that segues from where we left off with Ms. VanderWaal is if you were to amend your complaint or be allowed to amend it, what would you add with respect to Dr. Rome? Yes, Your Honor. So I actually want to clarify what happened according to Mr. Shifflett's complaint during that follow-up appointment with Dr. Rome. This is paragraph 20 in the complaint on page JA5. Mr. Shifflett went to Dr. Rome and told her that there was a lot of swelling in his face and that the alignment of his teeth wasn't right after the surgery. She just said to him, I think it's going to get better, which is not providing treatment. It is simply saying, I, your treating surgeon, think that it's going to get better on its own, and I'm not going to look further into the fact that you have this amount of swelling. So I wanted to just clarify the facts on that point. Yeah, but in that paragraph, it says that he asked for, you know, more pain medication and that she provided it. Yes, he does not, in fact. Another useful clarification, Your Honor. She suggested a prescription for him that Dr. Golsorky then declined to extend. So that was actually, on Dr. Golsorky's part, a failure to provide recommended treatment that had been recommended by Dr. Rome. We're just talking about Dr. Rome at the moment, right? So my point is, if Dr. Rome, in response to these complaints, as you allege, increased the dosage, right? Yeah, oh, sorry. Okay. But if the doctor increased the dosage, then what's the medical indifference? I mean, some of what's been suggested, and I think the district court mentions it as well, is that a negligence claim sounds like it, medical malpractice, maybe. But how does it fall into deliberate indifference? So to sort of circle back to Judge Ambrose's question, if given the opportunity to amend, what would the facts look like with regard to Dr. Rome? So for Dr. Rome... The facts to be alleged, I'm sorry. Yes, so both surgeries that we know of could constitute deliberate indifference, even in the surgery itself. And this court has found that even surgeries can be deliberately indifferent in the way that the surgeon conducts the surgery. Under Williams, this court found that a surgery was not performed up to standards. The surgery that was supposed to be performed wasn't. In the first surgery that Dr. Rome gave Mr. Shiflett, there were untreated hairline fractures in his jaw. She failed to remove the wisdom tooth. She enclosed the wisdom teeth in plates. In the second surgery, he was told that all of the hardware was going to be removed from his mouth. That simply didn't happen in that follow-up surgery with Dr. Rome. He awoke from surgery still with hardware in his jaw that was supposed to be removed. So even on the facts that Mr. Shiflett has alleged, he's stated at the pleading stage, at the very least, a deliberate indifference claim against Dr. Rome. Is there anything more than that? Against Dr. Rome, these three incidents... On the surgeries. It sounds to me like it might be medical malpractice. But why is it more than that? Under Youngberg v. Romeo, the Supreme Court has stated that even where normally a court would defer to a doctor's professional judgment, that's not always the case where there is a substantial deviation from accepted professional standards of care or standards of practice. And this court has recognized that in Pearson. This court recognized that expert witness testimony may sometimes be necessary to distinguish where the surgery or whatever medical treatment was provided was provided up to an adequate treatment and inadequacy of care claim like this one. So are you saying that in response to the judge's question, you're relying on some of the allegations in the complaint where other doctors have commented about Dr. Rome's, let's say, alleged deficiencies surgically? That's the basis for your deliberate indifference? In part, Your Honor. But I don't think it's necessary for Mr. Shifflett to have alleged or that his claims are relying specifically on that so much as even from a lay person's perspective, getting out of a surgery with problems that weren't there in your mouth before you entered the surgery shows you that something went very, very wrong. And that inadequacy of care can surpass medical malpractice standards and actually reach the level of deliberate indifference under Youngberg and Pearson. Quick question with regard to the Notice of Appeal. It didn't mention Dr. Mulligan. It didn't in the heading, Your Honor, but Dr. Mulligan is actually referenced throughout the Notice of Appeal. That was filed before we were appointed as counsel. So that was a pro se notice of appeal. And Dr. Mulligan actually recognizes that he was referenced throughout simply a clerical error. And I believe that the cases that Dr. Mulligan points to on that issue are generally where there were two different orders from the district court. And it's unclear which of the orders are actually being appealed. In this case, Dr. Mulligan was included in the district court's decision and was clearly referenced in the Notice of Appeal. All right. Thank you. Thank you, Your Honor. And we thank all counsel. I especially want to thank you, Ms. Wunder and Mr. Daniels, for the work you've done on this from the clinic's perspective. I know from all sides it's a whole lot of work. And are you still at the law school? I actually just graduated on Monday, Your Honor. You just graduated. So you're Mr. Daniels and you are? Mr. Brady. Brady. Well, thank you very much for taking on this matter. And may the rest of your summer go easier. Thank you. As they study for the ball. Depends which state. If you come to Delaware, it's a tough bar. Anyway, thank you. Thanks to everybody. And we'll take the matter under advisement. Thank you, Your Honor. The score stands adjourned until June 4th at 10 a.m. So, 38 years ago. Congratulations, you guys, for getting the J.T. Oh, thank you. Well, it was funny. I was saying, you know, I haven't been graduating yet. We haven't done this. But now we're graduating. Now we're actually taking it. What cars are you going to take? I'm taking Vermont, but I'm going to graduate from Ohio. Congratulations. Thank you. Congratulations. Thank you. You're going to do great. That's what I'm going to do. We're going to do a better job at this. I appreciate it. I'm sorry. She couldn't take the trip with us. She's already enrolled at Interest. She moved to Maryland, to the Maryland department. No, actually, I do think, actually, she's been there a couple of times. It does go down a lot. But I can figure it out. Right, exactly.